UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VELOCYS, INC., et al., | ) | CASE NO. 5:10CV747 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| CATACEL CORP., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | [Resolving Doc. 57] |
| | ) | |

This matter comes before the Court on Plaintiffs' motion for sanctions pursuant to 28 U.S.C. § 1927.  The Court has considered the pleadings, parties' memoranda, and applicable law. For the reasons discussed below, the motion is GRANTED as detailed herein.

**I.      BACKGROUND**

This action was filed on April 11, 2010, and Plaintiff Velocys, Inc. sought an immediate hearing on its request for a temporary restraining order ("TRO").  The Court scheduled and held such a hearing on April 15, 2010, with full participation from Defendant Catacel Corp. and its counsel.  The pending motion arises from conduct that occurred during that hearing.

Specifically, during the hearing, the Court learned that Catacel had shipped roughly 3/8 of the total catalyst strips that it was required to ship under its contract.  Moreover, defense counsel informed the Court in a straightforward manner that nothing could occur in the near future that would necessitate immediate action by the Court.  Velocys now takes issue with both those statements and contends that they warrant sanctions.

## II. LEGAL STANDARDS

### A. Attorney Sanctions under 28 U.S.C. § 1927

Although "a prevailing party may not ordinarily recover attorneys' fees," it may do so when a statute provides for such an award. *See Shimman v. Int'l Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984) (explaining the "American Rule" regarding attorneys' fees). Section 1927 provides for an award of costs and fees where an attorney has "multiplie[d] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The purpose of § 1927 sanctions are to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).

In *Wilson-Simmons v. Lake County Sherriff's Department*, 207 F.3d 818, 824 (6th Cir. 2000), the Sixth Circuit set forth the following standard to apply in determining whether sanctions are warranted under § 1927:

> Sanctions under § 1927 are warranted when an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party. An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits . . . . Accordingly . . . when an attorney knows *or reasonably should know* that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney. Bad faith is not required to support a sanction under § 1927.

*Id.* (emphasis in original) (citations omitted) (internal quotation marks omitted).

More recently, the Sixth Circuit has stated that sanctions are appropriate under § 1927 when an attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Red Carpet Studios*, 465 F.3d at 646. In

2

*Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 645 (6th Cir. 2009), the Sixth Circuit noted that this language "suggests a higher standard than the one described above in *Wilson-Simmons*." The Sixth Circuit declined to reconcile any "apparent conflict" between the standards because it concluded that the district court's finding that the attorney facing sanctions in *Garner* "intentionally pursued meritless claims" satisfied either standard. *Garner*, 554 F.3d at 645; *Jones v. Continental Corp.*, 789 F.2d 1125, 1230 (6th Cir. 1986).

This Court does not read *Red Carpet Studios* as establishing or applying a higher standard than the one set forth in *Wilson-Simmons*. A standard providing for sanctions when an attorney "knowingly disregards the risk that his actions will needlessly multiply proceedings," *Red Carpet Studios*, 465 F.3d at 646, is similar to a standard providing for sanctions when an attorney "*reasonably should know* that his or her tactics will needlessly obstruct the litigation of nonfrivolous claims," *Wilson-Simmons*, 207 F.3d at 824 (emphasis in original). Both standards invoke recklessness, "a showing of something less than subjective bad faith, but something more than negligence or incompetence." *See Red Carpet Studios*, 465 F.3d at 646.

### III. Analysis

Any award of sanctions in this matter hinges upon consideration of the impact of statements made by Catacel's president, William Whittenberger, and its counsel during the TRO hearing. At first blush, the statements appear innocuous and little more than standard argument. However, the facts reveal that the statements made by Whittenberger can best be described as "half-truths." Moreover, defense counsel's confident statements regarding the lack of a need to go forward immediately can best be described as "uninformed."

The backdrop of this litigation involves a race between Velocys and Compact GTL to produce certain technology that both would like to market to Petrobras for use in its offshore oil

drilling. Within this litigation, Velocys initially sought to stop Catacel from shipping product to a customer, Johnson Matthey, that effectively acts as a middleman between Catacel and Compact GTL. In its complaint, Velocys contends that certain catalyst strips manufactured by Catacel infringe upon patents owned by Battelle Memorial Institute, but which are licensed to Velocys.

On April 15, 2010, this Court conducted a hearing on Velocys' request for a TRO. During the hearing, counsel for Catacel made the following statement:

> There's nothing, no facts set forth in the briefs or any of their exhibits which indicate an event that's going to happen before you could resolve a preliminary motion. There's absolutely no need for a TRO within the next ten days.

Doc. 18 at 22. This statement came with no qualifying language, nor did it suggest that counsel had not adequately prepared in order to make such a statement.

Later in the hearing, the Court recessed to allow the parties to confer with one another. During this recess, Velocys learned that Catacel had shipped only 3/8 of the catalyst strips required under its contract. As a result, Velocys withdrew its TRO request. Later on, as discovery progressed, Velocys came to learn that Catacel's contract included not only the parts necessary to fill the reactor for the Petrobras demonstration, but also numerous replacement parts. In other words, at the time of the TRO hearing, Catacel was much closer to providing the total number of strips needed to run the reactor than anyone on the defense side was willing to admit. In stark contrast to those facts, the Court was led to believe that Catacel would be shipping parts for many months before its contract was fulfilled and therefore no immediate action was necessary.

In response to the motion for sanctions, Catacel essentially asserts that it made no false or misleading statements at any time. In support, Catacel claims that it contracted to provide certain catalyst strips to Johnson Matthey. The contract does not distinguish between the parts

4

necessary for the demonstration and replacement parts.  Moreover, Catacel's representatives have repeatedly indicated that they have never known the precise number of catalyst strips necessary for the demonstration.

The facts as detailed through this motion practice, however, place Catacel and its counsel in an unflattering light.  First, Catacel's president, William Whittenberger, sat idly by while his counsel informed the Court that no action was necessary on the TRO motion because no meaningful activities would take place in the near future.  If the Court were to believe Whittenberger, that he truly had no idea of the breakdown between needed parts and replacement parts, then the Court questions the statements made by counsel.  If Whittenberger himself genuinely did not know the specifics surrounding the ultimate use of his products, then there is certainly no manner in which his counsel could have known.  As a result, the bold statements made by counsel had *no factual basis*.  In other words, counsel had no reasoned basis for asserting that no immediate action by the Court was necessary to preserve the status quo.

In the alternative, the Court could conclude that Whittenberger knew full well the impact of his statements.  Whittenberger's later deposition testimony seems to reveal that he was fully aware that is comment regarding the shipment of only 3/8 of the total contract amount could be misconstrued.  While maintaining that he never fully knew the breakdown of needed versus replacement parts, Whittenberger also seemed to concede that he would have offered up additional information if, and only if, more **specific** questions had been raised by Velocys or the Court.  For example, at the time of the hearing, Whittenberger was well aware that two separate purchase orders existed and that he expected to fulfill the first purchase order within two weeks of the TRO hearing.  Instead, Catacel chose to bury that information within responses to paper

5

discovery.  Had the Court and Velocys been informed of that information, there is little question that the early proceedings would have taken a different route.

Based upon the above, the Court finds that an award of sanctions is appropriate.  Counsel for Catacel represented to the Court that nothing meaningful would occur prior to the time the Court could hold a hearing on the request for a preliminary injunction.  It is clear from the record that at that time, counsel either 1) knew that a shipment would take place that would allow the demonstration to occur OR 2) had insufficient knowledge to make any assertion about the immediate future.  Having fully reviewed the matter and the numerous pleadings, the Court is convinced that counsel did not make any knowing misrepresentations to the Court.  Such conduct would stand in stark contrast to the manner in which counsel has conducted themselves in this litigation.  The lack of intentional misstatements, however, does not remedy the fact that counsel made statements with no factual basis.

The Court has taken into consideration how quickly this matter progressed.  Within just days of the filing of the complaint, the Court conducted the TRO hearing.  Moreover, Catacel's counsel flew in from outside the state and appeared very quickly before the Court.  The timeline again, however, does not permit counsel to make statements to the Court that have no factual basis.  Likewise, it is no defense that even Catacel's own representatives did not know the impact of the shipments that were going to occur in the very near future.  It is precisely this lack of knowledge that should have compelled counsel to make ***no*** statements about the need or lack thereof for an immediate hearing.

## IV.     CONCLUSION

Velocys' motion for sanctions is GRANTED.  At this time, it is unclear to the Court what precise harm flowed to Velocys' from the statements made during the TRO hearing.

Accordingly, within 14 days of this order, Velocys shall file a brief of no more than 10 pages that details the alleged harm that flowed from this conduct. Within 14 days of that filing, Catacel may respond with a brief in opposition that does not exceed 10 pages.

    IT IS SO ORDERED.

    DATE: October 18, 2011         */s/ John R. Adams*
                                                    Judge John R. Adams
                                                    UNITED STATES DISTRICT COURT